# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

WAND NEWMAN,

|  |  |  |
|---|---|---|
| | Petitioner, | : | Case No. 1:13-cv-165 |

- vs - 

District Judge William O. Bertelsman
Magistrate Judge Michael R. Merz

TOM SCHWEITZER, Warden,
  Lebanon Correctional Institution

                                                                    :

Respondent.

# REPORT AND RECOMMENDATIONS

Petitioner Wand Newman brought this action *pro se* under 28 U.S.C. § 2254 to obtain habeas corpus relief from his conviction in the Hamilton County Common Pleas Court on three counts of robbery and his consequent sentence to twenty-one years imprisonment in Respondent's custody (Petition, Doc. No. 3, PageID 49, ¶¶ 1, 3, 5,). He pleads the following grounds for relief:

> **Ground One:** Mr. Newman's Fourth and Fifth Constitutional Amendment rights were violated under Statute [sic] USCS and 3501 USCS.
>
> **Supporting Facts:** Mr. Newman stated "Well, it's done. I can get a lawyer and we settle up from, there," during his interview. By saying this, we wanted it over and done with until he had a lawyer. The motion to suppress his statement should have been granted because the police continued to interview him even after he stated he wanted to stop until he had a lawyer.
>
> **Ground Two:** The prosecutor violated Mr. Newman's due process by withholding favorable evidence to the defendant, under the Fifth Constitutional Amendment and Statute [sic] 28 USCS 1448 and 28 USCS 510.

1

**Supporting Facts:**  On the 911 call made on April 1, 2009 by Ms. Jefferson, she and her co-worker discussed and described a "glove" left at the crime scene, dropped by the robber.  This glove was never part of my demand for discovery packet and I hadn't found out about it until my trial.  At that time, the actual 911 call was played.  My trial lawyer told me it was too late to get it tested for DNA because the trial was already underway.

**Ground Three:**  Mr. Newman's Sixth Constitutional Amendment was violated because he had ineffective assistance of counsel under Statute [sic] 28 USCS 1448.

**Supporting Facts:**  My trial lawyer did no pre-trial investigation that would have changed the outcome of the trial.  If he would have traveled to the Argosy Casino, he would have found someone who had witnessed my presence there.  Also, if he would have found out about the glove left at the crime scene by listening to the April 1, 2009, 911 tape, he could have had it tested for DNA to prove that it was not me wearing that glove because my DNA would not be there.

(Petition, Doc. No. 3.)


**Procedural History**


Newman was indicted by a Hamilton County Grand Jury on three counts of robbery arising out of two separate incidents at the Family Video store near his home on March 26 and April 1, 2009.  Newman was convicted by a jury on all three counts.  The trial judge merged counts 2 and 3 under Ohio Revised Code § 2941.25 and then sentenced Newman to two consecutive five-year sentences to be served consecutively to an eleven year sentence imposed in another case.  The First District Court of Appeals affirmed on September 8, 2010.  On June 28, 2011, Newman filed a motion for delayed appeal in the Ohio Supreme Court which was denied.  He filed a petition for post-conviction relief on April 13, 2010.  The petition was denied in the trial court on February 15, 2012.  Instead of filing an appeal, Newman filed a petition to vacate

in the First District Court of Appeals.  He timely appealed to the Ohio Supreme Court from denial of that petition, but that court declined to exercise jurisdiction.  On October 20, 2010, Newman filed an application to reopen his direct appeal under Ohio R. 26(B) which the court of appeals denied.  The Ohio Supreme Court again declined jurisdiction and the instant Petition followed on March 13, 2013.

# Analysis

**Ground One:  Petitioner's Statement to the Police Should Have Been Suppressed**

In his First Ground for Relief, Newman asserts that his statement to the police should have been suppressed because he asked for an attorney and the police did not cease interrogation at that point.  Newman cites both the Fifth and Sixth[1] Amendments, the right not to incriminate oneself and the right to counsel.

**Procedural Default**

Respondent asserts this Ground for Relief is procedurally defaulted because Newman did not timely appeal from the First District Court of Appeals to the Ohio Supreme Court.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted
> his  federal  claims  in  state  court  pursuant  to  an

---

[1] Newman cites the Fourth and Fifth Amendments in the Petition, but he corrects this to Fifth and Sixth in the Reply.

> adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id.* Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id.*

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright*. *Murray*, 477 U.S. at 485; *Mapes v. Coyle,* 171 F.3d 408, 413

4

(6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97

(6th Cir.), *cert denied,* 474 U.S. 831 (1985).  Failure to present an issue to the state supreme court

on discretionary review constitutes procedural default.  *O'Sullivan v. Boerckel*, 526 U.S. 838,

848 (1999)(citations omitted).  "Even if the state court failed to reject a claim on a procedural

ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and

pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d

423, 437 (6th Cir. 2009), *citing Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(*quoting

O'Sullivan v. Boerckel,* 526 U.S. 838, 846-7(1999))*; see also Deitz v. Money,* 391 F.3d 804, 808

(6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in

the state courts, but were not[.]"). The corollary to this rule is that where a petitioner raised a

claim in the state court but in violation of a state's procedural rule, a state court must expressly

reject the claim on that procedural ground for a federal court to deem the claim defaulted. *See

Williams*, 460 F.3d at 806 (noting that a state court's expressed rejection of a petitioner's claim on

procedural basis and petitioner's complete failure to raise a claim in state court are the two ways

a claim can be in procedural default).

     The record establishes that Newman did not take a timely appeal from the decision of the

First District Court of Appeals to the Ohio Supreme Court.  The 45-day time limit on appeal to

Ohio Supreme Court is an adequate and independent state ground.  *Bonilla v. Hurley,* 370 F.3d

494, 497 (6th Cir. 2004)(citations omitted).  Lack of counsel at that stage, lack of a trial

transcript, unfamiliarity with the English language, and short time for legal research in prison do

not establish cause to excuse this default. *Bonilla*, *citing Murray v. Carrier,* 477 U.S. 478, 494-

95 (1986).  Where a state court is entirely silent as to its reasons for denying requested relief, as

when the Ohio Supreme Court denies leave to file a delayed appeal by form entry, the federal

courts assume that the state court would have enforced any applicable procedural bar. *Bonilla,* 370 F.3d at 497, *citing  Simpson v. Sparkman,* 94 F.3d 199, 203 (6th  Cir. 1996).

In his Reply, Newman makes no response to the procedural default claim.   The Magistrate Judge finds it is well taken and respectfully recommends the First Ground for Relief be dismissed with prejudice as procedurally defaulted.

**Merits Analysis**

Alternatively, should the Court reach the merits of the First Ground for Relief, the claim should also be dismissed as without merit.  When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Just last month, the Supreme Court strongly reinforced this rule.

> [The  §  2254(d)(1)  standard  is  difficult  to  meet.] *Metrish  v. Lancaster*, 569 U. S. ___, ___, 133 S. Ct. 1781, 185 L. Ed. 2d 988, 996 (2013). "'[C]learly established Federal law'" for purposes of §2254(d)(1) includes only "'the holdings, as opposed to the dicta, of this Court's decisions.'" *Howes v. Fields*, 565 U. S. ___, ___, 132 S. Ct. 1181, 182 L. Ed. 2d 17, 25 (2012) (quoting *Williams v. Taylor*, 529 U. S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). And an "unreasonable application of" those holdings must be "'objectively unreasonable,'" not merely wrong; even "clear error" will not suffice. *Lockyer v. Andrade,* 538 U.S. 63, 75-76, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U. S. ___, ___, 131 S. Ct. 770, 178 L. Ed. 2d 624, 641 (2011).

*White v. Woodall*, 572 U.S. ___, 2014 U.S. LEXIS 2935, 8-9 (Apr. 23, 2014).

Newman presented this claim to the First District Court of Appeals on direct appeal.  It held as follows:

### Equivocal Invocation of the Right to Counsel

[*P22] In his fourth assignment of error, Newman argues that his statements to police should have been suppressed because they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  Specifically, he contends that the police had continued to question him despite his request for counsel.

[*P23] During his interview with Newman, Officer Sellers told Newman that he was wasting the officer's time. Newman responded, "Well, mean, I guess it's done, then. I can get a lawyer and then we can settle up from there." Newman argues that his response was an unequivocal invocation of his right to counsel, and that all questioning should have stopped at that point.

[*P24] Police officers must immediately stop questioning a suspect who clearly asserts his right to counsel.  *Edwards v. California*, 451 U.S. 477 (1981) But "[i]f the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Davis v. United States*, 512 U.S. 452, 461-62 (1994); see, also, *State v. Jackson,* 107 Ohio St. 3d 300 (2006).  A suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis, supra*, at 459.

[*P25] Courts have held that statements such as "maybe I should talk to a lawyer," (*Id.*)  "[w]hen I talk to my lawyer," (*Jackson, supra,*) or "I think I need a lawyer" (*State v. Henness,* 79 Ohio St. 3d 53, 62-63 (1997))[2] are not unequivocal assertions of the right to counsel. Similarly, we hold that Newman's statement that "I can get a lawyer" was not a clear assertion of his right to counsel. Under the circumstances, a reasonable officer would not have

---

[2] Henness' Fifth Amendment claim was later rejected by this Court in habeas and by the Sixth Circuit on appeal. *Henness v. Bagley*, 2007 U.S. Dist. LEXIS 80647 (S.D. Ohio 2007), affirmed 644 F.3d 308 (6th Cir. 2011).

> understood Newman's statement to have been a request for an attorney. Because Newman's statement did not meet the requisite level of clarity, the officers were not required to stop questioning him. Consequently, the trial court did not err in overruling his motion to suppress the statements that he had made to police. The fourth assignment of error is overruled.

*State v. Newman*, 2010–Ohio-4180, 2010 Ohio App. LEXIS 3582 (1st Dist. Sept. 8, 2010).

Newman has not demonstrated that this is an objectively unreasonable application of *Miranda*, *Edwards*, or *Davis*.  It is therefore entitled to deference by this Court under 28 U.S.C. § 2254(d)(1).

**Grounds Two and Three:  Violation of *Brady v. Maryland* and Ineffective Assistance of Trial Counsel Regarding a Glove**

In his Second Ground for Relief, Newman asserts the prosecutor violated his Due Process rights as enunciated in *Brady v. Maryland*, 373 U.S. 83 (1963), by not producing for DNA testing the glove which witnesses said the robber dropped at the scene.  In part of his Third Ground for Relief he asserts his trial lawyer provided ineffective assistance by not demanding the glove and having it tested for DNA.

The State has a duty to produce exculpatory evidence in a criminal case.  If the State withholds evidence and it is material, the conviction must be reversed.  *Brady, supra*.  "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *United States v. Bagley*, 473 U.S. 667, 683 (1985).  "The proper *Brady* inquiry is whether the cumulative effect of the withheld evidence leads us to conclude that there is a reasonable probability that the result of the trial would have been different."  *Apanovitch v. Bobby*, 648 F.3d 434,  442(6th Cir. 2011), *citing*

*Doan v. Carter*, 548 F.3d 449, 460 (6th Cir. 2008). In addition, an evaluation of the question of prejudice requires consideration of all the relevant evidence that the factfinder would have had if the withheld evidence had been disclosed, including any evidence that might have been derived from the withheld material. *Wong v. Belmontes*, 558 U.S. 15, 19-20 (2009).

Newman first presented this claim about the glove as a claim of ineffective assistance of trial counsel in his petition for post-conviction relief under Ohio Revised Code § 2953.21. Respondent asserts that the claim is procedurally defaulted because it was not raised on direct appeal and in any event it was not raised there as a claim of prosecutorial misconduct. As quoted in the Return of Writ, the claim about the glove is only made in the post-conviction petition as a claim of ineffective assistance of counsel. (Return, Doc. No. 10, PageID 1057.) Examining the post-conviction petition makes it plain that Newman's prosecutorial misconduct claim there did not include failure to produce the glove. In the petition Newman admitted that he did not have evidence supporting the claim but would need an attorney and DNA analysis and had moved the court to provide expert assistance. (State Court Record, Doc. No. 9, PageID 955-56.) Judge Helmick summarily overruled the post-conviction petition. *Id.* at PageID 969.

Instead of appealing, Newman filed an original Petition to Vacate or Set Aside Judgment of Conviction in the First District Court of Appeals which raises the same claims in virtually the same language as the petition in the trial court. *Id.* at PageID 970-75. The First District overruled the Petition, citing the statute which requires that post-conviction petitions be filed in the trial court, Ohio Revised Code § 2953.21(A)(1)(a). *Id.* at PageID 976. Newman did appeal to the Ohio Supreme Court, essentially attaching a copy of what he filed as an original matter in the court of appeals. *Id.* at 977-88. That court declined to exercise jurisdiction. *Id.* at PageID 989.

9

Respondent asserts this claim is procedurally defaulted in several ways.  First of all, as an ineffective assistance of trial counsel claim, it could have been raised on direct appeal because the record discloses the existence of the glove and the fact that trial counsel did not receive it or attempt to get it analyzed for DNA.  Under Ohio law, a claim of ineffective assistance of trial counsel which could have been raised on direct appeal but was not is barred from later presentation by *res judicata.  State v. Perry,* 10 Ohio St. 2d 175 (1967).  The Sixth Circuit has repeatedly held that this *res judicata* rule is an adequate and independent state ground for decision.  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

A second basis for procedural default is Newman's failure to appeal from denial of his post-conviction petition to the First District Court of Appeals.  That is, assuming he could properly present the claim in post-conviction at all, he forfeited the claim when he did not appeal from the trial court's denial.  Although he "re-filed" his petition in the court of appeals, that is not a permissible way to appeal from a trial court judgment on a post-conviction petition and that particular rule was enforced against him when the court of appeals dismissed the re-filed petition.

Even if the claim had been properly presented as a prosecutorial misconduct claim either on direct appeal or post-conviction, it is without merit.  The transcript of the 911 call which mentions a glove is at PageID 453-54.  It contains a statement that the robber was wearing plastic gloves, but not that he took one off and dropped it at the scene.  Ms. Jefferson says not that the robber dropped the glove, but that the person identified only as "unidentified female speaker"

dropped it. That person asserts the glove came out of Ms. Jefferson's purse, which she denies. *Id.* There is no evidence that the police recovered a plastic glove at the scene of the crime, much less that it was a glove that the robber had been wearing.

The sequence of events which Newman hypothesizes from the 911 call is very unlikely. What robber is careful enough to wear plastic gloves to commit a robbery, then takes one off his hand and leaves it at the scene of the crime? As Respondent point out, there was a latex glove in evidence, but it was found in Newman's vehicle.

Newman's claim that there exists a glove in the possession of the State which the robber took off and dropped on the floor at the crime scene and which contains the DNA of the real robber is without merit and also procedurally defaulted. The Second Ground for Relief and the glove portion of the Third Ground should be dismissed with prejudice.

**Ground Three: Ineffective Assistance of Trial Counsel: Alibi Investigation**

As to the second robbery (on April 1, 2009), Newman presented an alibi witness, Terry Burroughs, who testified he was with Newman until they split up about 11:00 p.m. when Newman wanted to go to Argosy Casino. Burroughs testified that at about midnight he texted Newman who replied that he was at the casino. Newman himself did not testify as to his whereabouts at that time. His theory is that if his trial attorney had gone to Argosy Casino to investigate the alibi, "he would have found someone who had witnessed my presence there." (Petition, Doc. No. 3, PageID 56.)

This claim was not raised on direct appeal and Respondent asserts it was therefore forfeited. The record on appeal would have established that Newman was relying on an alibi

claim to which Burroughs testified and that no witnesses from Argosy Casino were presented. At least part of the claim could have been raised on direct appeal. The Magistrate Judge believes, however, that this claim would best have been raised in the post-conviction petition because it would have relied on evidence outside the direct appeal record, to wit, that no investigation was made and what would have been uncovered by an investigation.

However, when one examines the post-conviction petition, one finds that Newman's ineffective assistance of trial counsel claims are limited to the failure to have the glove DNA tested and failure to have Newman examined by a psychologist to undermine his confession. (Return of Writ, Doc. No. 9, PageID 955, 957.) It is only when he filed his Petition to Vacate in the court of appeals that he adds the claim about Argosy, this time as a claim that there would have been a surveillance tape which showed him present. *Id.* at PageID 971.

As with Grounds One and Two, this claim is procedurally defaulted by Newman's failure to include it in his first petition for post-conviction relief. Furthermore the claim is speculative. The April 1, 2009, robbery occurred at 11:59 P.M.. Newman's alibi witness indicated Newman dropped him off at 11:00 at a place where he certainly could have been at the Family Video by midnight. Although his alibi witness testified he received a text from Newman around midnight stating that he was "almost at the casino," that proves nothing. It is common knowledge that a text message claiming to be in one place can be sent from anywhere. If he had robbed the Family Video at midnight, Newman would have had a strong motive to attempt to create an alibi by sending the text he did. Furthermore, the alibi claim is completely inconsistent with Newman's statement to the police that he left his home about 1:00 A.M. and did not arrive at Argosy until 1:30 A.M. Finally, Newman has presented no evidence that there existed as of the time of trial either a surveillance tape or a live witness who could have verified his presence at

12

Argosy.  In his post-conviction petition, he merely sets up the claim and does not even provide his own affidavit with any particulars (e.g. what parts of the casino he visited, the identity either by name or description of anyone who might have seen him, etc.).  Instead, he asks the trial court to assist him by appointing an attorney to do the investigation.

Newman's Third Ground for Relief as it relates to investigation of possible alibi evidence at Argosy Casino should be dismissed with prejudice as procedurally defaulted and without merit.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

May 5, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).